We'll now move to the sixth case of the day, Rogers against City of Hobart, Appeal Number 20-2919. And we have Mr. Holmes. And let's wait a moment for Mr. Atkus. Mr. Atkus? OK. OK. Everyone is present and visible. Mr. Holmes, you may proceed. Good morning, Your Honor. Thank you, Judge Hamilton. May it please the court. I'm Cliff Holmes, and I represent appellant Cortez Javan Rogers. This matter is before the court on appeal from the September 30, 2020, order of the district court. Dismissing plaintiff's complaint against defendants Rob Gonzalez, the City of Hobart, Indiana, and the Hobart Police Department alleging instigation of false arrest, instigation of false imprisonment, invasion of privacy, negligent infliction of emotional distress, and deprivation of plaintiff's rights under the Fourth Amendment to the US Constitution, in addition to the foregoing name claims. The district court's September 30 opinion and order dismissing plaintiff's complaint under Rule 12b-2 in this case disregarded well-established principles of personal jurisdiction. Mr. Holmes, is there a reason that this case could not be brought in Indiana? So, Your Honor, is that Judge Kirsch? Yes. I'm scrolling. Yes, yes. Just wanted to scroll, yes, to the speaker. Your Honor, plaintiff is not aware of a reason that the case could not be brought in Indiana. However, plaintiff is exercising his right to file suit in Illinois, his jurisdiction of residence. And thus, it's not an either or in the way the plaintiff sees it. In the way the plaintiff sees it, there's a jurisdictional analysis that can be applied in either jurisdiction. The defendants have contested jurisdiction in Illinois and asserted that it is proper in Indiana. If the court were to affirm, plaintiff would have no choice but to file in Indiana. And go ahead. Have you taken steps to file in Indiana in case we rule against you and you don't have jurisdiction in the present case? Your Honor, I've had preliminary discussions with two potential local counsel for such an action. And certainly, it would be the intention to take further steps to formalize a relationship with local counsel and make a filing. Likely by April 1, should we not hear back from the court before then, we've requested expedited consideration of this appeal for the reasons stated in that motion. However, plaintiff's intention would certainly be to keep his claims going forward if he had no choice but to file in Indiana. Mr. O'Connor. Judge Kirsch. Go ahead, Judge Hamilton. Go ahead. I was going to ask, have you served notices under the Indiana Tort Claims Act? Yes, Your Honor, we have. Plaintiff accomplished that in April of 2019, Your Honor. Thank you. Mr. Holmes, the reason I asked whether there was some sort of bar to bringing suit in Indiana here is, would you agree that what you're asking us to do to find personal jurisdiction in Illinois under these circumstances could have far-reaching consequences? Clearly, police do not confine their investigations to the borders within their states. And even if there was some shoddy police work here that resulted in your client spending a day in jail, the city of Hobart has said, look, there is jurisdiction in Indiana. But wouldn't you agree that such an opinion providing jurisdiction in Illinois for Sergeant Gonzalez's police work could have far-reaching consequences here? And by the way, we don't really look to the plaintiff, right? We look to the defendant's conduct. So we have to look at what the police officer did in the particular state, in this case, Illinois, to determine whether personal jurisdiction exists. Your Honor, Judge Kirsch, what I would say to that is that the plaintiff's position that the decision of this case should be dictated by the facts of this case. And as to far-reaching, every case to be issued by this court and this panel would have a precedential effect that could be far-reaching. However, I think it would depend greatly on how the court tailored its decision. I do want to bring to the court's attention, I think this is important, and to your point, Judge Kirsch,  that here in this case, now it was two days in jail, and it was a nightmare for my client. He did have a felony arrest record attached to his face was splashed in newspapers. I'm not suggesting that it wasn't. Exactly. But, Your Honor, what I'd say is this. The only state which defendants are known with certainty to have searched on identifying information for a person of interest named Cortez Rogers, in this case, is Illinois. And it's speculation that they may have even searched in other states, such as Indiana. And we can see why this is. It was a publicly known fact established before the district court that as of early March, 2019, Juarez Rogers, the homicide suspect, and the father of person of interest, Cortez Juarez Rogers, was an Illinois resident. This was paragraph 20 of plaintiff's amendment complaint we attached as Exhibit J to our opposition to the motion to dismiss a press release from Griffith, Indiana PD saying Juarez Rogers is an Illinois resident. The reason this is significant is because the person of interest himself was an 18-year-old. So if you are an investigator in Sergeant Gonzalez's shoes, and you want to know where Cortez Juarez Rogers lives, it is very likely, it's more plausible, more than plausible, it's likely he's gonna be living in the same jurisdiction as his parent, which was known not just on the press release, but also many contemporaneous news articles we attached to Exhibit A, just one of those articles. If you even Google Juarez Rogers in March of 2019, you would immediately become aware that he is an Illinois resident. So what we say, Your Honor, is when Sergeant Gonzalez went to the Griffith, Indiana investigator, whom he did enlist to assist with this search for identifying information on Cortez Rogers, he took with him the Griffith, Indiana PD press release stating that Juarez Rogers is an Illinois resident. It was public knowledge, and an ordinary investigator is chargeable with knowledge of public information directly pertaining to his investigation. But what does that have to do with his, what does that have to do with what he did in Illinois? Putting aside, if you're arguing shoddy police work here, what does that have to do with his contacts with the state of Illinois, such to confer personal jurisdiction against him in the city in Illinois? So, Your Honor, we've asserted five sets of facts that established jurisdiction. The standard, this court has never adopted a standard that the plaintiff needs show negligence, so to speak. However, plaintiff does submit and believe that he could if this court were to so announce such a standard. However, what we're saying, Your Honor, is there was the acquisition of the information off the server, not of a private company, but of the state of Illinois itself, which has a jurisdictional contact. It can't get much more significant than that. There are cases, the felon case by this court in 2012, recognized in a footnote, the significance of a contact with the server. They're the cases we've cited from the Second Circuit. But second, Your Honor, we cite Sergeant Gonzalez's swearing out of an information affidavit naming my client, who he knew at the time that he swore the affidavit, which was March 25th, 2019, to be an Illinois resident. And he asserted falsely that my client had committed a crime, which he had not. My client had never set foot in Indiana. The third set of facts, Your Honor, is the transmission of warrant information into Illinois to effectuate my client's arrest. The fourth set of facts is the sharing of my client's photo with the Post Tribune, which has wide readership in Illinois. And the fifth is the phone call from James Gonzalez to my client's friend, Brian Starks. I've reserved one minute on rebuttal. I'm scrolling to see the time and the clock. Now it's 2.30, just to note that. So if I may continue, if there are questions. The other points I wanted to make to the court are that what the Hobart defendants and Sergeant Gonzalez are asking this court to do is to infer a state of willful ignorance on the part of Sergeant Gonzalez, that he was blindfolded, an ostrich in the sand, as he went about his business investigating and finding my client. And in fact, what we know is that the server of Jesse White was searched to find my client, and they found, to find a person named Cortez Rogers, and the defendants in that process found my client. And when it came time to account to the public for what had occurred here, and the defendants' words, how this mistake came about, one of the first things mentioned by their spokesman, James Gonzalez, is they said, both Cortez Juarez Rogers and my client are Illinois residents. In other words, the way they framed it in the news article was, anyone could have made this mistake, but for jurisdictional purposes, our point is, well, exactly. There's no indication that Sergeant Gonzalez ever ran a search in Indiana for my client, and all the evidence points in the direction that he was searching in Illinois for my client, and he found him, or for a person named Cortez Rogers, but he found my client. Can I go back to the point that Judge Kirsch was raising earlier, Mr. Holmes, which is about the reach of the kind of doctor, the principles you're asking us to apply here. Police, as I understand it, will fairly routinely put warrants into a nationally available database. Is that right? That is correct, Your Honor, and I have reserved one minute for rebuttal. I see we're reaching that point, but I'd like to answer further questions you have. I'd like to follow up, and then we'll give you a little extra time, but so if your client has a warrant out on him, he could have been found in Wisconsin, he could have been found in California or Florida, right? And a traffic stop would have resulted in a warrant check and an arrest, right? Well, if that has been the fact, Your Honor, that could have occurred, right? However, my client, well- That's what I'm asking about, because you seem to be telling us that a police officer who issues a mistaken warrant is then vulnerable to defend himself or herself anywhere in the country where that warrant is executed. And I see virtually no authority supporting that general proposition. Well, Your Honor, the Greenwald decision issued by the Fifth Circuit last year, which involved the cease and desist letter sent by the Attorney General of New Jersey, and the Fifth Circuit's having found personal jurisdiction there, does support our position. I would also say, Your Honor, it is the nuclei of all five sets of facts, and not just the transmission of warrant the plaintiff is relying on here. Mr. Rogers himself is a homebody. He doesn't own a driver's license. He doesn't have a car. He doesn't travel to these other jurisdictions. If they were going to find him ever, it was going to be in Illinois. And I would just also point, Your Honor, to the Taylor decision from the 10th Circuit, which we cited in our opening brief, and also the district court cases in Maney, which was the Wisconsin district court case, Littleman and Greenwald. I understand how Your Honor may events concern in a hypothetical case, but in this case, and on these facts, it all happened in Illinois. It didn't happen in one of those other jurisdictions, but I can understand your concern, Your Honor, on a hypothetical case. Thank you, Mr. Holmes. Thank you. All right, Mr. Atkins for the defense. Good morning, may it please the court. Mike Atkins on behalf of the city of Hobart, the Hobart Police Department, and Rod Gonzalez. The district court below issued a well-reasoned and yet entirely consistent approach towards the people of the country when faced with the issue of whether there's personal jurisdiction over a non-forum law enforcement officer when that officer has sought an arrest warrant that is later enforced by law enforcement in the forum state. For that reason, we're asking the court to affirm this morning. I just, I did wanna take a second before I'm moving on to my prepared remarks to address Judge Kirsch's question about whether the ruling plaintiff is urging here would have wide ranging consequences. And of course it would. And the reason for that is because police do not choose their suspects or where their suspects happen to be from or where their suspects have their state IDs issued from. So the suspect here, as plaintiff pointed out, was an Illinois resident. Our clients knew that. The suspect could have very easily been a California resident, a Michigan resident, a Wisconsin resident from the perspective. Strakas, when you say the suspect, do you mean the plaintiff or do you mean the son of the murder defendant? Well, I guess for the purposes, I guess the distinction, it doesn't really make a difference here. Clearly the correct suspect was the son of the murderer and not the plaintiff. But the fact that they had the same name and the knowledge that they were from the same state, maybe he wasn't the correct suspect, but he at least for a short time was a suspect in the case. So from the perspective of the officer and the officer's contacts with the forum, where the suspect he happens to be investigating is from or has their ID issued from is random and fortuitous. It's not directed. And I think this is a reason why this type of cases, specifically unique from the more common business or commercial type of cases that you see these jurisdictional issues raise it, where you can see the defendant targeting the forum jurisdiction for its commerce. Here, the case led my clients, the case he was investigating led my clients to Illinois. He did not drag the case there. I just want to briefly discuss the cases that the district court relied on that are consistently relied on the cases that have been held throughout the country, declining to recognize personal jurisdiction in a mistaken arrest warrants. Snyder versus Snyder, where the plaintiff was arrested in Minnesota on a Colorado warrant and sued the Colorado deputies in Minnesota. There, the court found that posting the arrest warrant on an observable database and a single fax and a quote transfer of information wasn't sufficient to address the case. If you were, if your voice is not directed pretty closely to the camera, we're not picking up what you have to say. Oh, I'm sorry. I apologize. Let me try to move my computer a little bit. Is that better? So far, yeah. Okay. Another case would be Bush versus Adams, where the plaintiff was arrested in Pennsylvania on a Virginia warrant. And the plaintiff sued the Virginia officers in Pennsylvania. In that case, more similar to this one, it was alleged that the defendant officer knew that the warrant was likely to be executed in the forum state. Arguably, that's the case here. It's certainly been alleged that we knew that we were issuing a warrant for an Illinois resident. So I guess it's a somewhat reasonable inference that the arrest warrant was likely to be issued here. But again, that was not significant enough to establish a minimum context. So could I ask you to address, Mr. Atkins, one of the hypotheticals in the plaintiff's reply brief, their parade of horribles, about the fairly recent and disturbing practice of swatting, of making a call to get swat teams to go to a person's, to a personal enemy's home and surround them. Sometimes there've been tragic consequences as a result. Suppose that a private person swats someone across the state line. Is there any problem there in personal jurisdiction? So in your hypothetical, Judge, a private person makes a phone call to... It's a 911 call. In another jurisdiction? Yes. Well, in that case, they would be choosing and directly reaching out to that other state, not the one where they're located in. Right. And what happened... They have conduct itself in the reaching out. What happened in this case in Illinois is exactly what the defendants intended to have happen, correct? Correct. Okay. And is there any difference between that and the swatting example, other than whether it was deliberately malicious or just mistaken? The difference is the connection with the contact to the nature of the case. I don't know what that means. Whereas with the swatting, the contact is the tort. The call, the wrongful conduct is making the call for the false report with the false police report. In this case, the alleged wrongful conduct is submitting a false application for a warrant in Indiana on an Indiana crime to an Indiana judge. The fact that the target of the warrant happened to be an Illinois resident is not significantly case-related from the perspective of the defendant. So I think to make the swatting analogy more appropriate, you would have to have my client in Indiana submitting his request for an arrest warrant to a judge over in Illinois and specifically targeting Illinois in that way. Which is, again, it goes back to Judge Kirsch's concern about the far-reaching consequences of plaintiff's urge rule because officers who are investigating crimes in their states don't choose where their suspects are from. Real briefly, I would like to discuss what I think is a good test in this type of case. It comes from the Delaware State Police case, which was the district court case out in New York, which seems to be the leading and most cited case on this issue. And what they say there, in their sort of analysis and collection of the cases, the distinction they draw is that where the non-forum officer had an established relationship or the forum officials closely coordinated with their activities, with the apprehension of the arrestee across state lines, those would be sufficient case-related contacts between the defendant and the forum. In this case, there is no established relationship between my clients and the CPD, and there's no allegation or evidence that they closely coordinated. They didn't call and ask for a statewide manhunt for Mr. Rogers. He was picked up at a traffic stop, and I see him on a time. So thank you, Your Honors. All right, thank you very much, Mr. Atkins. Mr. Holmes, we used, or at least I used up your last minute of rebuttal. So go ahead and take a minute of rebuttal. Thank you, Your Honor. I do appreciate that, Judge Hamilton. Just very briefly in rebuttal, I'd like to say to the panel that Mr. Atkins did acknowledge an important concession very early in his presentation just given, which was that the defendants did know that they were seeking a person or suspect in Illinois, an Illinois resident. So every aspect of what they were doing, as we describe it in the nuclear facts here, from obtaining information off the server of the Secretary of State, swearing out a warrant, seeking the arrest of an Illinois resident, swearing out an affidavit and information, seeking the arrest of an Illinois resident is a moot exercise if all that could ever happen is that that could result in an arrest of a Cortez Rogers in Indiana, because my client has never been in Indiana. So from there, they sent the warrant information into Illinois, and everything kept pointing in the direction of Illinois until my client was handcuffed and put in Cook County Jail without any basis. Now, I would like to very briefly address two of the cases cited by defendants, including one that Mr. Atkins just mentioned. Those are the Delaware case, and then there's a Maryland case cited by defendants. In both of those cases, the plaintiff had previously resided in the defendant law enforcement officer's jurisdiction. So it wasn't clear that the law enforcement officers even knew or had reason to know that the plaintiffs in that case  Here, at every given moment, the defendants in this case knew that my client was in Illinois. And therefore, there are sufficient minimum contacts. Section 209A10 of the Illinois Long-Arm Statute is satisfied and the decision of the district court should be reversed. Thank you. All right, thanks to both counsel. The case will be taken under advisement.